## John W. Sherrick

### v.

## The Town of Houston.

*Highways—Poll Tax—Regularity of Proceedings—Sec. 60, Act of 1887—" Able-Bodied"—Definition—Gun Shot Wound—Evidence—Conflict —Expert Testimony.*

A man who is ordinarily physically able to perform the labor usually performed by able-bodied men on the public roads, is not exempt from liability for the poll tax provided for in Sec. 60 of the act of 1887.

[Opinion filed January 21, 1889.]

Appeal from the Circuit Court of Adams County; the Hon. William Marsh, Judge, presiding.

Messrs. Bonney & Woods, for appellant.

Messrs. Carter & Govert, for appellee.

*Per Curiam.*    In the spring of 1884 the commissioners of highways of the town of Houston levied a poll tax of $1.50 against appellant for road purposes, and on his refusal to pay it brought this suit before a justice of the peace, which was

appealed to the Circuit Court, where a trial by jury resulted in a verdict and judgment against him for that amount.

The only alleged ground of defense upon the merits was that he was not an "able-bodied" man. It was said that he had been wounded at the battle of Chickamauga, and it appeared that a bullet passed between the tibia and fibula of his left leg, about half way from the ankle to the knee, injuring both of those bones, and so healing as to affect the limb specially and his nervous system in general. The question was as to the extent and effect of these injuries. Seven doctors testified as experts, from an examination of the limb, that in their judgment he was not an able-bodied man, and several of them that he could not do a day's work on the road without injury to his health.

On the other hand, there was the testimony of two witnesses to his distinct admission made with reference to the question of his liability to perform road labor under the statute, that he was an able-bodied man. He said that when he was a commissioner the board made a rule that such labor should not be required of any pensioner, and therefore only, he refused to pay the tax. A considerable number of others, who knew him and had observed him at different times at different kinds of work on his own farm and for his neighbors, from such personal acquaintance and actual observation believed him to be an able-bodied man.

It is true they did not observe him for any great length of time continuously, nor at very hard work.

He owned a large body of land, most of which he rented out, and employed all the help he wanted on what he cultivated. He was under no necessity of much or hard personal labor. It seems to have been a question of technical ability in the view of experts and actual ability in the view of farmers and laborers who knew and observed him. The court's idea, as conveyed by the instructions given to the jury, was that an "able-bodied" man, in the sense of this statute (Sec. 60 of the road and bridge law of 1887), was one who is "ordinarily physically able to perform the labor usually performed by able-bodied men on the public roads." The evidence

showed that there was some lameness in appellant's left foot, and that at times he complained of rheumatism (which some of the doctors, however, said was not rheumatism, but the effect of his wound upon his nervous system); but it is probable that some of the jurors who performed such labor were subjects of some slight special lameness or weakness, and also of rheumatism at times. But few laborers are entirely free from such troubles.

We think the court's definition was not what is represented by counsel—an ability to do one day's work in a year—nor so understood by the jury; "ordinarily" able to do such work, though with exceptions of rheumatic and other such days, as in the cases of most men, was a sufficiently liberal and substantially a correct definition. In the light of that definition and of all the evidence the jury found him liable to road duty, and we do not feel authorized to overrule them. The somewhat famous and forcible remarks of Judge Breese on the comparative weight of the opinions of experts and the judgment of actual observers who are not experts, seem to apply here.

A defense was also attempted on the ground that in levying this tax the commissioners had not followed with due strictness the provisions of the statute. The objections urged to these proceedings and to the evidence offered to prove them were so many as to make a discussion of them all separately and in detail impracticable. Nor can we make a selection that would satisfy the party or counsel as to those not included. We therefore go no further in this direction than to say that, considering the object of the proceedings and the character of the officers, these objections were technical, unsubstantial, and properly overruled.

Nor do we think it possible that appellant could have been prejudiced by the exclusion of evidence complained of, if the rulings were erroneous. The pension certificate was not a judgment, *in rem* or otherwise, conclusive upon the plaintiff. It had no tendency to prove any material fact that was disputed. The proof of a gun-shot wound in the leg was abundant *aliunde*, and the fact not disputed. That he was a pen-

sioner was immaterial. He might have received a pension for the loss of an eye, if he had lost one, but that would not exempt him from liability for road labor or the commutation poll tax. Prather was corroborated by a witness who was uncontradicted. Plaintiff declined to testify.

We perceive no good reason for reversing the judgment, which will, therefore, be affirmed.

*Judgment affirmed.*